UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

VALERIE R.,[1]

                            Plaintiff,

         v.

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.
_____

<u>DECISION & ORDER</u>

22-CV-0226MWP

## <u>PRELIMINARY STATEMENT</u>

Plaintiff Valerie R. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income and Disability Insurance Benefits ("SSI/DIB"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 9).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 7, 8). For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable legal standards.

_____

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and plaintiff's motion for judgment on the pleadings is denied.

## BACKGROUND

On March 22, 2016, plaintiff filed for SSI/DIB alleging disability beginning on February 14, 2014, due to depression, anxiety, borderline personality disorder, bipolar depression, and memory loss. (Tr. 140, 147, 188).[2] On May 18, 2016, the Social Security Administration ("SSA") denied plaintiff's claims for benefits, finding that she was not disabled. (Tr. 53-54). Plaintiff requested and was granted a hearing before an administrative law judge (Tr. 85), which occurred on May 3, 2018 (Tr. 30-52). In a decision dated June 1, 2018, Administrative Law Judge Timothy M. McGuan found that plaintiff was not disabled and was not entitled to benefits. (Tr. 12-29). On February 1, 2019, the Appeals Council denied plaintiff's request for review of ALJ McGuan's decision. (Tr. 1-6). Plaintiff then commenced an action in the United States District Court, Western District of New York on March 28, 2019, seeking review of the Commissioner's decision. (Tr. 709-42). On February 23, 2021, Judge Wolford issued a decision remanding plaintiff's claim on the grounds that ALJ McGuan's "assessment of [p]laintiff's ability to engage in interactions with the public, supervisors, and co-workers [was] unsupported by substantial evidence." (Tr. 748).

On February 26, 2021, the Appeals Council remanded plaintiff's claims for further proceedings consistent with Judge Wolford's February 23, 2021 Decision and Order. (Tr. 756). On September 28, 2021, Administrative Law Judge Bryce Baird held a hearing on plaintiff's remanded claims. (Tr. 650-84). During the proceeding, plaintiff's representative

---

[2] The administrative transcript (Docket # 4) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

requested to amend plaintiff's claims to a closed period of disability from February 14, 2014 to

December 31, 2018, due to plaintiff's return to work in January 2019. (Tr. 656). ALJ Baird

accepted the amendment. (Tr. 628). In a decision dated November 30, 2021, ALJ Baird found

that plaintiff was not disabled and not entitled to benefits. (Tr. 624-49). On March 18, 2022,

plaintiff commenced the present action seeking review of the Commissioner's decision. (Docket

# 1).


**DISCUSSION**

I.      **Standard of Review**

This Court's scope of review is limited to whether the Commissioner's

determination is supported by substantial evidence in the record and whether the Commissioner

applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004)

("[i]n reviewing a final decision of the Commissioner, a district court must determine whether

the correct legal standards were applied and whether substantial evidence supports the

decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also*

*Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo*

whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's

conclusions are supported by substantial evidence in the record as a whole or are based on an

erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C.

§ 405(g), a district court reviewing the Commissioner's determination to deny disability benefits

is directed to accept the Commissioner's findings of fact unless they are not supported by

"substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to

any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is

defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1)     whether the claimant is currently engaged in substantial gainful activity;

(2)     if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3)     if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix

> 1 of Subpart P of Part 404 of the relevant regulations (the
> "Listings");
>
> (4)  if not, whether despite the claimant's severe impairments,
>      the claimant retains the residual functional capacity
>      [("RFC")] to perform [his or her] past work; and
>
> (5)  if not, whether the claimant retains the [RFC] to perform
>      any other work that exists in significant numbers in the
>      national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467.

"The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t

step five the burden shifts to the Commissioner to 'show there is other gainful work in the

national economy [which] the claimant could perform.'"  *Butts v. Barnhart*, 388 F.3d at 383

(quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).


## II.   The ALJ's Decision

In his decision, ALJ Baird followed the required five-step analysis for evaluating

disability claims.  (Tr. 627-43).  Under step one of the process, ALJ Baird found that plaintiff

had not engaged in substantial gainful activity ("SGA") from February 14, 2014 through

December 31, 2018 – the requested closed period.  (Tr. 630).  At step two, ALJ Baird concluded

that plaintiff had the severe impairments of bipolar disorder, cyclical and panic disorder, episodic

and a non-severe history of migraine headaches and cannabis abuse.  (Tr. 630-31).  With respect

to plaintiff's mental limitations, ALJ Baird found that she suffered from mild difficulties in

understanding, remembering, and applying information and in adapting and managing herself,

and moderate difficulties in interacting with others and in maintaining concentration, persistence,

and pace.  (Tr. 631-33).  At step three, ALJ Baird determined that plaintiff did not have an

impairment (or combination of impairments) that met or medically equaled one of the listed impairments. (Tr. 631-34).

ALJ Baird concluded that during the closed period plaintiff had the RFC to perform a full range of work at all exertional levels with certain non-exertional limitations. (Tr. 634). Specifically, ALJ Baird limited plaintiff to simple routine tasks that can be learned after a short demonstration or within 30 days; no more than superficial interaction with the public or coworkers; work that does not require teamwork, such as on a production line; and, work that is subject to no more than occasional supervision. (*Id.*). At steps four and five, ALJ Baird determined that plaintiff could not have performed her past relevant work during the closed period but that positions existed in the national economy that plaintiff could have performed, including addresser, auto detailer, and photocopy-machine operator. (Tr. 642-43). Accordingly, ALJ Baird found that plaintiff was not disabled during the identified period. (Tr. 643).

### III.    Plaintiff's Contentions

Plaintiff contends that ALJ Baird's determination is not supported by substantial evidence and is the product of legal error. (Docket # 7-1). Specifically, she contends that the ALJ erred by impermissibly cherry-picking evidence from the end of the closed period to discount the more restrictive limitations assessed by her treating psychiatrist, Balvinder Kang, M.D. (*Id.*). Plaintiff requests that the Court remand her case solely for calculation and payment of benefits because "the record is fully developed, [plaintiff] has requested a closed period of benefits, this case has already been remanded once, and the vocational expert's testimony

demonstrates that if Dr. Kang's opinion had been properly considered, a finding of disability would have necessarily followed."  (*Id.* at 12).

## IV.   <u>Analysis</u>

Plaintiff contends that the ALJ violated the treating physician rule when he accorded Dr. Kang's opinion less than controlling weight and "reject[ed] the disability-supporting portions of [the] opinion."  (*Id.* at 12).  Specifically, plaintiff maintains that the ALJ failed to give "good reasons" for "rejecting *all* of the more restrictive portions of Dr. Kang's opinion[] . . . [by] impermissibly rel[ying] upon cherry-picked evidence from the [later portions of] the record."  (*Id.* at 14).

An ALJ should consider "all medical opinions received regarding the claimant." *See Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005) (citing 20 C.F.R. § 404.1527(d)).  Generally, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) ("[t]he opinion of a claimant's treating physician as to the nature and severity of an impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record") (internal quotations and brackets omitted).  Thus, "[t]he opinion of a treating physician is generally given greater weight than that of a consulting physician[ ] because the treating physician has observed the patient over a longer period of time and is able to give a more

detailed picture of the claimant's medical history." *Salisbury v. Astrue*, 2008 WL 5110992, *4

(W.D.N.Y. 2008).

> "An ALJ who refuses to accord controlling weight to the medical opinion of a
> treating physician must consider various 'factors' to determine how much weight to give to the
> opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).  The ALJ must explicitly
> consider the "*Burgess* factors":

>> (1) the frequency of examination and length, nature, and extent of the treatment
>> relationship,

>> (2) the amount of medical evidence supporting the opinion,

>> (3) the consistency of the opinion with the record as a whole,

>> (4) whether the opinion is from a specialist, and

>> (5) whatever other factors tend to support or contradict the opinion.

*Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010) (summary order); *see also*

*Estrella v. Berryhill*, 925 F.3d at 95-96 ("[f]irst, the ALJ must decide whether the opinion is

entitled to controlling weight[;] ... [s]econd, if the ALJ decides the opinion is not entitled to

controlling weight, it must determine how much weight, if any, to give it[;] [i]n doing so, it must

'explicitly consider' the ... nonexclusive '*Burgess* factors'").  "At both steps, the ALJ must 'give

good reasons in its notice of determination or decision for the weight it gives the treating

source's medical opinion.'" *Estrella*, 925 F.3d at 96 (alterations omitted) (quoting *Halloran v.*

*Barnhart*, 362 F.3d at 32); *Burgess v. Astrue*, 537 F.3d 117, 129-30 (2d Cir. 2008) ("[a]fter

considering the above factors, the ALJ must comprehensively set forth [his] reasons for the

weight assigned to a treating physician's opinion[;] ... [f]ailure to provide such 'good reasons'

for not crediting the opinion of a claimant's treating physician is a ground for remand") (citations

and quotations omitted); *Wilson v. Colvin*, 213 F. Supp. 3d 478, 482-83 (W.D.N.Y. 2016) ("an

ALJ's failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight given denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based on the record") (alterations, citations and quotations omitted). "This requirement allows courts to properly review ALJs' decisions and provides information to claimants regarding the disposition of their cases, especially when the dispositions are unfavorable." *Ashley v. Comm'r of Soc. Sec.*, 2014 WL 7409594, *1 (N.D.N.Y. 2014) (citing *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).

On April 27, 2018, Dr. Kang completed a mental residual functional capacity questionnaire regarding plaintiff, whom he had been treating since August 17, 2016. (Tr. 619-23, 639).  Dr. Kang stated that plaintiff's bipolar disorder and panic disorder had been treated with psychotherapy and medications with minimal improvement.  (Tr. 619).  His clinical findings included mood swings, severe depression, manic episodes, panic attacks, and excessive worry, and he indicated that her prognosis was guarded.  (*Id.*).  Dr. Kang opined that plaintiff was "unlimited or very good" in her ability to remember work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; ask simple questions or request assistance; be aware of normal hazards and take appropriate precautions; and, adhere to basic standards of neatness and cleanliness.  (Tr. 621-22).  He found that plaintiff was limited but satisfactory in her abilities to sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; make simple work-related decisions; respond appropriately to changes in a routine work setting; understand and remember detailed instructions; set realistic goals or make plans independently of others; interact appropriately with the general public; maintain socially appropriate behavior; travel in unfamiliar places; and, use public transportation.  (*Id.*).  He

9

opined, however, that plaintiff was seriously limited in her ability to maintain regular attendance and be punctual within customary, usually strict tolerances; maintain attention for two hour segments; complete a normal workday and workweek without interruptions from psychologically-based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; deal with normal work stress; carry out detailed instructions; and, deal with stress of semiskilled and skilled work. (*Id.*).  Dr. Kang did not indicate that plaintiff was unable to meet competitive standards or had no useful ability to function in any of the identified categories.  (*Id.*).  Nonetheless, he indicated that plaintiff's impairments or treatment would cause her to be absent from work more than four days per month and that she could not engage in full-time competitive employment on a sustained basis.  (Tr. 623).

In assessing the various medical assessments of record, ALJ Baird afforded Dr. Kang's opinion "some weight."  (Tr. 640-41).  Specifically, ALJ Baird found that Dr. Kang's opinion regarding plaintiff's "limited but satisfactory" and "unlimited or very good" abilities is "generally consistent with the overall evidence of record."  (Tr. 640).  However, ALJ Baird concluded that Dr. Kang's opinion that plaintiff would be absent at least four days per month and was seriously limited in the above-described areas "is not consistent with the overall evidence of record, including the contemporaneous treatment records of Dr. Kang."  (*Id.*).

In supporting these findings, ALJ Baird referred specifically to Dr. Kang's treatment records from March 16, 2018, April 17, 2018, May 22, 2018, and October 9, 2018.  During the March 16, 2018 appointment, which "occurred about one month prior to [Dr. Kang's] completi[on] [of] the medical source statement," plaintiff reported that she was not having any

10

panic attacks and denied side effects with medications, and demonstrated an euthymic but anxious mood on mental status examination. (*Id.*). In subsequent appointments, plaintiff "informed Dr. Kang of only 'occasional' and 'mild' depression or irritability" and denied mood swings, panic attacks, depression, and suicidal ideation. (*Id.*). Furthermore, Dr. Kang indicated "an entirely unremarkable mental status examination" during plaintiff's last visit on July 31, 2018. (*Id.*). ALJ Baird noted that in the October 9, 2018 discharge summary, Dr. Kang assessed that plaintiff's depression and anxiety were under control and that plaintiff was "able to cope" at her last visit. (*Id.* (internal quotation mark omitted)).

Plaintiff maintains that ALJ Baird erred in evaluating Dr. Kang's opinion because he "focus[ed] only on the more recent treatment records that showed [p]laintiff's condition improving close to the end of the requested closed period[] [and] . . . made no attempt to reconcile the longitudinal inconsistencies in [p]laintiff's mental health or acknowledge the cyclical nature of [p]laintiff's bipolar disorder." (Docket # 7-1 at 12). Specifically, plaintiff contends that ALJ Baird "provided no discussion" and "failed to address *any*" of Dr. Kang's and Licensed Mental Health Counselor Michael Finnegan's earlier treatment records when rejecting the more restrictive portions of Dr. Kang's opinion. (*Id.* at 16). Plaintiff emphasizes records mostly from 2016 and 2017 that indicated plaintiff was angry, moody, anxious, irritable, depressed, and labile; complained of panic attacks; reported seeing shadows; engaged in self-harm/cutting behaviors; and, had ruminating thoughts, including suicidal ideation. (*Id.*).

Plaintiff's argument is undercut by a careful review of ALJ Baird's articulated analysis. While discussing Dr. Kang's opinion, ALJ Baird assessed that plaintiff's "overall course of treatment with Dr. Kang[, which spanned from August 17, 2016 to July 31, 2018,] consistently revealed no cognitive deficits and only remarkable findings in mood, despite the

claimant's varying complaints."  (Tr. 640).  He also observed that from April 2017, "Dr. Kang made no changes to the types of prescribed medications, which consisted of Prozac, Depakote, and Klonopin, with only an increase in Prozac on November 1, 2017."  (*Id.*).  In addition, ALJ Baird indicated that his review of the record showed that Dr. Kang's course of treatment was "like [that of plaintiff's] prior course of treatment with Dr. Rahman," from whom plaintiff received treatment from March 14, 2014 to September 29, 2015.  (Tr. 640-41).  Finally, ALJ Baird found that Dr. Kang's opinion is "inconsistent with the fact that the claimant began working at SGA level shortly after" he rendered the opinion.  (Tr. 641).  ALJ Baird explained that there "is no evidence of significant medical improvement that would have accounted for [plaintiff's] ability to work at SGA level, thus indicating that Dr. Kang overestimated the severity of the claimant's functional limitations."  (*Id.*).  These citations bely plaintiff's contention that, in assessing Dr. Kang's opinion, the ALJ failed to consider the longitudinal record or evidence from the beginning of the closed period.

Moreover, as a general matter, "the ALJ is not obligated to 'reconcile explicitly every conflicting shred of medical testimony,'" *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) (quoting *Gecevic v. Sec. of Health & Human Servs.*, 882 F. Supp. 278, 286 (E.D.N.Y. 1995)), and there is no "absolute bar to crediting only portions of medical source opinions.  *Younes v. Colvin*, 2015 WL 1524417, *8 (N.D.N.Y. 2015).  Instead, where the ALJ's "RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d at 297 (quoting Soc. Sec. Ruling 96-8p, 1996 WL 374184, *7 (1996)).  Accordingly, an ALJ who chooses to adopt only portions of a medical opinion must explain his or her decision to reject the remaining portions.  *See Younes v. Colvin*, 2015 WL 1524417 at *8

12

(although an ALJ is free to credit only a portion of a medical opinion, "when doing so smacks of 'cherry picking' of evidence supporting a finding while rejecting contrary evidence from the same source, an administrative law judge must have a sound reason for weighting portions of the same-source opinions differently"); *Phelps v. Colvin*, 2014 WL 122189, *4 (W.D.N.Y. 2014) ("[t]he selective adoption of only the least supportive portions of a medical source's statements is not permissible") (internal quotations and brackets omitted); *Caternolo v. Astrue*, 2013 WL 1819264, *9 (W.D.N.Y. 2013) ("[i]t is a fundamental tenet of Social Security law that an ALJ cannot pick and choose only parts of a medical opinion that support his determination") (internal quotations omitted) (collecting cases); *Searles v. Astrue*, 2010 WL 2998676, *4 (W.D.N.Y. 2010) ("[a]n ALJ may not credit some of a doctor's findings while ignoring other significant deficits that the doctor identified").

In his decision, albeit not in the specific portion analyzing Dr. Kang's opinion, ALJ Baird acknowledged and analyzed more severe notations in Dr. Kang's treatment records, thereby reconciling those notations with his ultimate RFC finding.  *See Adam R. T. v. Comm'r of Soc. Sec.*, 2023 WL 1775689, *5 (N.D.N.Y. 2023) (ALJ's decision must be read "as a whole"; "given that the ALJ's discussion of the medical evidence in the record immediately preceded his discussion of [doctor's opinion], . . . there was no need for the ALJ to repeat his analysis . . . for a second time").  For example, ALJ Baird acknowledged that when Dr. Kang conducted an initial psychiatric evaluation of plaintiff in August 2016, plaintiff reported "moodiness, feeling depressed, no energy or motivation, panic attacks, and angry outbursts."  (Tr. 637).  Nonetheless, ALJ Baird also identified that the only remarkable objective mental status examination findings were an "irritable, depressed, and anxious mood" (*id.*) and that there were "essentially no changes in the mental status examination[s] at visits with Dr. Kang [that] generally [occurred]

every two months through July 31, 2018, when she was discharged due to failure to return"
(Tr. 638).  ALJ Baird also recognized that in December 2016 plaintiff reported seeing shadows
in her room but observed that Dr. Kang only indicated that plaintiff was anxious and did not
make any changes to her medications.[3]  (Tr. 638).  ALJ Baird also explicitly mentioned that in
January 2017 plaintiff reported one panic attack in the previous month with some persistent
anger and irritability but no racing thoughts or depressive episodes.  (*Id.*).

      Moreover, a comprehensive review of the decision demonstrates that ALJ Baird
conducted a thorough review of the entire record and that his RFC finding is supported by
substantial evidence.  In his decision, ALJ Baird reviewed plaintiff's subjective complaints as
memorialized in her Social Security reports, treatment records, and hearing testimony; the
objective findings and course of treatment described in the medical evidence of record; and the
opinion evidence of Dr. Kang, consultative examiner Christine Ransom, Ph.D., agency
psychological consultant A. Dipeolu, Ph.D., and consultative examiner Susan Santarpia, Ph.D.[4]
(Tr. 634-41).

      For example, ALJ Baird acknowledged plaintiff's reports that she was unable to
go out alone due to her anxiety (Tr. 632); she had anxiety attacks "almost every day" that "could
last for hours mostly," which were triggered by "being in public, situations, memories, and any
kind of confrontation" (Tr. 635 (internal quotations omitted)); she quit her part-time job around
September 2016 due to anxiety, depression, and mania (*id.*); she had to take Klonopin which

---

[3]  Review of that treatment record also indicates that Dr. Kang found that plaintiff's thought process was
logical, her perceptions were normal, and her insight and judgment were "good."  (Tr. 526).

[4]  ALJ Baird assessed no weight to Dr. Santarpia's opinion because it is "based . . . on an examination
occurring well after the requested closed period of disability, during which the claimant was performing substantial
gainful activity work."  (Tr. 641).  Similarly, the ALJ accorded "minimal weight" to the various Global Assessment
of Functioning scores assessed by various treating providers because the scores represent "vague, one-time
assessments of general symptomology and do not represent overall functioning over any significant period."  (*Id.*).

would make her go to sleep (Tr. 636); and she would avoid crowds (*id.*).  ALJ Baird also discussed plaintiff's inpatient hospitalization the weeks before the alleged onset date, during which she exhibited a depressed mood and impaired insight and judgment.  (*Id.*).  In addition, ALJ Baird referred to plaintiff's subsequent inpatient hospitalization in 2016, during which she underwent five courses of electroconvulsive therapy and was observed to have a depressed mood, restricted affect, and limited attention, concentration, insight, and judgment.  (Tr. 636-37).

Despite this history, ALJ Baird noted that "outpatient treatment records generally reveal relatively minimal deficits on the mental status examinations, no significant reports of side effects from the prescribed medications, and a subsequent portion of the treatment [records reflect] her denials of any significant panic attacks, depressive symptoms, or anxiety symptoms." (Tr. 637).  ALJ Baird also found it "notable" that the second inpatient "hospitalization occur[red] during an apparent gap in treatment" and "in the context of noncompliance with . . . medications."  (Tr. 636-37).  Likewise, as mentioned above, ALJ Baird acknowledged Dr. Kang's management of plaintiff's medications but observed that after April 2017 plaintiff remained on the same prescription regimen with only one increase in dosage on November 1, 2017.  (Tr. 637-40).  Again, ALJ Baird found that this was "like the prior course of treatment with Dr. Rahman" (Tr. 641), whose mental status examination findings generally only reflected that plaintiff exhibited a depressed mood and affect (Tr. 637).

Moreover, ALJ Baird considered and analyzed the opinions of Dr. Ransom (Tr. 392-95) and Dr. Dipeolu (Tr. 396-98).  (Tr. 641).  During her psychiatric consultative examination on May 6, 2016, plaintiff reported that her mood and anxiety had generally stabilized, and Dr. Ransom indicated that plaintiff's status mental examination was unremarkable except for a mildly dysphoric and tense mood and affect.  (Tr. 393-94.).  Nonetheless, ALJ Baird

accorded "minimal weight" to Dr. Ransom's assessment that claimant would have mild

limitations (Tr. 394-95) "because the overall evidence of record supports more than mild

limitations" in the identified areas (Tr. 641). ALJ Baird's conclusion that plaintiff was more

limited than Dr. Ransom indicated undermines plaintiff's argument that he simply cherry picked

the evidence least favorable to plaintiff. *See Mary M. v. Comm'r of Soc. Sec.*, 2024 WL

1045211, *8-9 (W.D.N.Y. 2024) (ALJ's conclusion that plaintiff's mental health symptoms were

more limiting than those assessed by the consultative examiners was "inconsistent with the

notion that he understated the severity of [p]laintiff's symptoms" or that he "failed to consider

the episodic nature of [p]laintiff's bipolar disorder or cherry picked evidence") (internal

quotations omitted).

ALJ Baird accorded Dr. Dipeolu's opinion significant weight. (*Id.*). Dr. Dipeolu

opined moderate limitations in plaintiff's ability to maintain attention and concentration for

extended periods; work in coordination with or in proximity to others without being distracted by

them; and complete a normal workday and workweek. (Tr. 62-63). ALJ Baird found that these

limitations were supported by objective evidence from throughout the entire closed period,

including abnormalities mostly in plaintiff's mood as opposed to her cognitive functioning.

(Tr. 641). In assessing Dr. Dipeolu's opinion, ALJ Baird also observed that plaintiff generally

denied side effects from her medications or significant episodes of depression, panic attacks, or

mania. (*Id.*).

Additionally, ALJ Baird's decision indicates that he considered plaintiff's

activities of daily living in formulating her RFC. ALJ Baird noted that on a typical day plaintiff

"tried to keep busy . . . by cleaning the apartment, taking care of [her] animals, and babysitting

her nephew" (Tr. 631 (internal quotation omitted)) and that the record contains multiple

references to her attempts to resume photography and reading (Tr. 312 (December 8, 2015); Tr. 563 (July 25, 2016); Tr. 1033 (April 6, 2017); Tr. 1026 (May 5, 2017); Tr. 1002 (June 26, 2017)).  Likewise, ALJ Baird referred to records reflecting that plaintiff had traveled to California to visit her sister from October 5, 2017 to October 19, 2017, during which she had a "very good time," and that she went to a concert in February 2018.  (Tr. 632 (internal quotation omitted)).

Importantly, in reaching his conclusion that more significant limitations were inappropriate, ALJ Baird observed that plaintiff returned to work in January 2019 and that "[t]here is no evidence of significant medical improvement that would have accounted for her [new] ability to work at SGA level."  (Tr. 641).  Indeed, even plaintiff's representative admitted at the hearing that Dr. Kang's "records basically denote a stability in her mental being during her visits for treatment."  (Tr. 662).  Counsel acknowledged that plaintiff is "noted to have times of irritability and moodiness and anxiety, but throughout the medical record, through her medical status examinations, there is mental stability throughout the record[;] [s]o, there's not documentation of the severity that is denoted in the treating source statement[;] [t]hroughout the record, it's treatment and keeping her mentally stable through medication and counseling."  (*Id.*). *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (substantial evidence exists where there is "such *relevant* evidence as a *reasonable* mind might accept as adequate to support a conclusion[;] . . . [t]he substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*") (internal quotations omitted).

Certainly, "[c]ycles of improvement and debilitating symptoms [of mental illness] are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few

17

isolated instances of improvement over a period of months of years and to treat them as a basis for concluding a claimant is capable of working." *Estrella*, 925 F.3d at 97 (internal quotation omitted). ALJ Baird, however, acknowledged that plaintiff had "bipolar disorder, cyclical" and addressed the medical evidence of record throughout the closed period, thus undermining any argument that ALJ Baird failed to consider the cyclical nature of plaintiff's condition and ignored evidence in the record favorable to plaintiff's claims. *See Traci R. o/b/o E.A.O.B. v. Comm'r of Sec. Sec.*, 2022 WL 4354367, *8 (N.D.N.Y.) ("[w]here, as here, the ALJ discussed evidence favored by the [p]laintiff in addition to evidence supporting the RFC, a suggestion of 'cherry-picking' is unavailing"), *report and recommendation adopted by*, 2022 WL 12318225 (N.D.N.Y. 2022); *Yeomas v. Berryhill*, 305 F. Supp. 3d 464, 467 (W.D.N.Y. 2018) ("[a]n ALJ need not recite every piece of evidence that contributed to [his] decision, so long as the record permits [the reviewing court] to clean the rationale of an ALJ's decision") (internal quotations omitted).

Therefore, I find that plaintiff's challenges amount to a disagreement with the ALJ's consideration of conflicting evidence. "[U]nder the substantial evidence standard of review, [however,] it is not enough for [p]laintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position." *Warren v. Comm'r of Soc. Sec.*, 2016 WL 7223338, *6 (N.D.N.Y.), *report and recommendation adopted by*, 2016 WL 7238947 (N.D.N.Y. 2016). Rather, plaintiff must "show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in [the] record." *Id.*; *see also Avant v. Colvin*, 2016 WL 5799080, *3 (W.D.N.Y. 2016) ("[a]ll of [p]laintiff's arguments focus on the substantiality of the evidence supporting the ALJ's decision[;] [h]owever, as the Second Circuit has explained, 'whether there is substantial evidence supporting

the claimant's views is not the question ...; rather, the [c]ourt must decide whether substantial evidence supports the ALJ's decision'") (quoting *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) (brackets omitted)).  The ALJ's decision in this case demonstrates that he weighed the record evidence, including the conflicting evidence; no basis exists for this Court to overturn the ALJ's assessment of the evidence or his resolution of the conflicts in it.  *See Casey v. Comm'r of Soc. Sec.*, 2015 WL 5512602, *9 (N.D.N.Y. 2015) ("[i]t is the province of the [ALJ] to consider and resolve conflicts in the evidence as long as the decision rests upon adequate findings supported by evidence having rational probative force[;] . . . [the ALJ] properly considered the totality of the record evidence, and concluded that the evidence quoted above outweighed [plaintiff's] evidence to the contrary") (internal quotation omitted).

## CONCLUSION

For the reasons stated above, this Court finds that the Commissioner's denial of SSI/DIB was based on substantial evidence and was not erroneous as a matter of law. Accordingly, the ALJ's decision is affirmed.  For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 8)** is **GRANTED**.  Plaintiff's motion for judgment on the pleadings **(Docket # 7)** is **DENIED**, and plaintiff's complaint (Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED**.

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
       August 16, 2024

19